# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JAMES CALHOUN-EL, 160-083       *
                                *
Plaintiff,                      *
                                *
v                               *   Civil Action No. RDB-13-1040
                                *
J. MICHAEL STOUFFER, et al      *
                                *
Defendants                      *
                              ***

## MEMORANDUM OPINION

Self-represented Plaintiff James Calhoun-El (hereinafter Calhoun-El) is suing Defendants Warden Bobby P. Shearin, Deputy Secretary J. Michael Stouffer, Jon P. Galley, Roderick Sowers, Bruce Liller,[1] and Sharon Baucom, M.D. under 42 U.S.C. § 1983.[2] Defendants, by their counsel, have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with an affidavit and verified exhibits. (ECF No. 12) Calhoun-El has replied [3] to the Response ECF No. 17. No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, Calhoun-El's conditions of confinement claims will be dismissed for failure to exhaust administrative remedies, all claims against Defendants Stouffer, Galley, Sowers, and Baucom ARE DISMISSED with prejudice, summary judgment IS GRANTED as to Defendants Shearin and Liller, and judgment is entered in their favor.

---

[1] Defendant Stouffer is Deputy Secretary of Operations for the Department of Public Safety and Correctional Services (hereinafter DPSCS). Defendant Galley recently retired as Executive Director of the Northern Region for DPSCS. Defendant Sowers is Director of the Division of Corrections for the North Region. Bruce Liller is Chief of the Psychology Department at North Branch Correctional Institution (hereinafter NBCI). ECF No. 12. Exhibit A. Calhoun-El refers to him as "Psychology Liller." ECF No. 1. Galley, Sowers, Liller, and Baucom are sued in their official capacities. Shearin and Liller" are sued in their individual capacities. Calhoun-El is suing Stouffer in his official and individual capacities. ECF No. 1 at 4-6.

[2] Service was not obtained on Defendant Deidre Mull. Calhoun-El's claim against her would be unavailing for reasons discussed herein. She will be dismissed from this lawsuit.

[3] Calhoun-El was provided an opportunity to file affidavits and verified exhibits, but has not done so. (ECF Nos. 13 and 17).

## PLAINTIFF'S CLAIMS

Calhoun-El claims he was subjected to cruel and unusual punishment in violation of his rights under the Eighth Amendment to the Constitution when, as an inmate at North Branch Correctional Institution ("NBCI"), he was placed in "solitary confinement" for thirteen months for violating institutional rules.[4] ECF No. 1. He further alleges that he has been denied access to certain mental health programs due to impermissible sexual and racial discriminatory animus. *See id.*

## FACTUAL BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). That review liberally construes Plaintiff's pleadings in light of the fact that he is proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### I. Calhoun-El's Allegations

Calhoun-El alleges his thirteen-month confinement in disciplinary segregation, which he refers to as "solitary confinement" was "tantamount to torture,"[5] and caused him to become depressed and suffer from a self-titled condition that he calls "Segregation Unit Housing Syndrome." (ECF No. 1 at 9, 12; ECF No. 12, Exhibit A ¶ 5(F)). He avers this condition entitled him to participate in the Behavior Management Program (hereinafter BMP) or the Special Needs Unit (hereinafter SNU), two mental health programs conducted at NBCI, but Liller and Nurse Deidre Mulls "ordered" that he "not be accepted in mental health programs." *Id.* at 8. Calhoun-

---

[4] Calhoun-El is presently housed at Western Correctional Institution.

[5] Notably, Calhoun-El does not specify what conditions were "tantamount to torture" or his efforts to bring these concerns to the attention of prison officials through the administrative process. *See infra* p. 8. Calhoun-El's allegations of excessive force on August 8, 2013, (ECF No. 17 at 4) are not at issue here. Calhoun-El may raise these claims by filing a separate complaint. The Clerk will send him a complaint form packet to assist him in the event he intends to pursue his claims.

2

El avers the decision to deny him admission to the programs demonstrates deliberate indifference to a substantial risk of harm to him. *Id* at 10. As redress, he seeks unspecified declaratory relief and compensatory and punitive damages of one hundred dollars a day "for each day housed in solitary confinement." *Id.* at 14-15.

## II. Defendants' Response

In support of their Motion for Summary Judgment, Defendants have filed a declaration executed by Bruce Liller ("hereinafter Liller"), Chief of the Psychology Department at NBCI. ECF No. 12, Exhibit A. Liller, who states he is familiar with Calhoun-El and the allegations he raises, attests: (1) Calhoun-El has exhibited a pattern of self-diagnosis of mental illness and disorders as a means of obtaining access to programs for which he is ineligible or to circumvent corrections procedures such as strip searching or double-celling; (2) Calhoun-El is not mentally ill and did not meet the criteria for admission into either the BMP or SNU programs; (3) Calhoun-El has no psychological illness or condition to prevent him from assignment to a double-cell; and (4) Calhoun-El is regularly monitored for his mental health and had access to other mental health programs at NBCI. *Id.* ¶¶ 3, 4, 5. Liller characterizes Calhoun-El as "a consummate complainer." *Id.* ¶ 4.

Liller categorically denies Calhoun-El's allegation that he and Nurse Deidre Mull "ordered" that Calhoun-El not be accepted into NBCI mental health programs. Liller attests "No such order was made. Participation in the programs Plaintiff wanted is governed by admission criteria which Plaintiff did not meet." *Id.* at ¶ 5. Indeed, the Behavior Management Program is designed for the most violent offenders. *Id.* at ¶ 5(D), *see also* Exhibit B at 9-10 (Criteria for Placement in BMP).

3

Liller explains:

> ...[A]n inmate must have demonstrated a history of aggressive behavior while incarcerated, but Plaintiff is not that kind of inmate. He has not demonstrated violent behavior. His desire to join the program was most likely motivated by his desire to get off disciplinary segregation.

*Id.* at ¶ 5(D).

The Special Needs Unit Program enrolls inmates who are seriously mentally ill. *Id.* ¶ 5 (G); Exhibit C (Special Needs Unit Program Manual). According to Liller, Calhoun-El does not meet SNU admission criteria consisting of "21 diagnoses which identifies [sic] inmates who are seriously mentally ill." *Id.* Additionally, an assessment of Calhoun-El's institutional behavior and adjustment indicated he was not an appropriate SNU enrollee. *Id.*

Liller refutes Calhoun-El's claim that he was placed in "solitary confinement." *Id.* ¶ 5(A). Calhoun-El was not placed in "solitary confinement" at NBCI; rather, he was assigned to disciplinary segregation because he had committed prison rule infractions. *Id.* ¶ 5(A). Liller states:

> Such confinement [on disciplinary segregation] is a common and routine tool of prison management, whereby the administration hopes that the taking of privileges enjoyed by the general population from misbehaving inmates will induce them to conform their conduct to the requirements of the institution when their disciplinary time has been served and the privileges restored. Although disciplinary segregation is inherently more stressful than general populations and most prisoners on disciplinary segregation show some signs of anxiety, Plaintiff did not exhibit levels of anxiety atypical for the environment. If anything, Plaintiff's anxieties were fueled by his own complaints and his belief that he should not be held accountable for his behavior. Plaintiff's anxiety was treated with a small dosage of anti-depressant- 10 mg of Celexa. Although Plaintiff has a history of self-reporting depressive symptoms, there was no diagnosis of depression until April 2013. This is very likely due to Plaintiff's receiving Interferon treatment for his Hepatitis CF. Depression is a very common side-effect of Interferon treatment.

*Id.* ¶ 5(B).

In addition, Liller disputes Calhoun-El's allegation that NBCI psychology staff showed indifference to his mental health needs. Liller states Calhoun-El was regularly monitored and treated for his conditions, although "he was continually dissatisfied with the treatment because he believed he should be enrolled in programs for which he did not qualify." *Id. Id.* at ¶ 5 (E). Liller attests that Calhoun-El had access to all other mental health programs at NBCI, and nurse Deidre Mull regularly monitored Calhoun-El's mental health as part of his Hepatitis C treatment. *Id.* ¶ 5·(I). Liller notes "SHUS" or "Special Housing Unit Syndrome." is not a recognized mental health condition in DSM IV.[6] *See id.*

Lastly, Liller attests that Defendants Stouffer, Galley, Baucom, Sowers and Shearin "play no role in the provision of mental health care to NBCI prisoners, including, Plaintiff. " *See id.* ¶ 7. Liller states neither he nor any member of the psychology staff, including Nurse Deidre Mull, play a role in processing inmate complaints, requests for administrative remedy, or other communications. *Id.* at ¶ 5(j). When asked to provide information to investigating corrections staff, mental health providers will respond accordingly. *Id.*

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006). (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must

---

[6] This Court takes notice that DSM is the acronym for the Diagnostic and Statistical Manual of Mental Disorders, a publication of the American Psychiatric Association. *See* http://www.psych.org/practice/dsm/dsm5.

"accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

II. **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–

48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "' is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the

color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert Calhoun-El's claims should be dismissed for lack of administrative exhaustion. Additionally, they assert Defendants Stouffer, Galley, Sowers and Baucom are immune from suit for damages pursuant to the Eleventh Amendment of the U.S. Constitution, were not personally involved in the matters at issue, and cannot be held liable under principles of supervisory liability. Further, Defendants posit Calhoun-El has failed to allege a claim of constitutional moment and they are entitled to summary judgment as a matter of law.

### I.    Exhaustion of Remedies

Defendants assert this case should be dismissed based on Calhoun-El's failure to exhaust administrative remedies as is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Calhoun-El states the PLRA has no application to his claims and this case. ECF No. 1 at 2 and 6.

The PLRA generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. It provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To the extent, Calhoun-El's raises claims concerning the conditions of his confinement in disciplinary segregation housing, the exhaustion provision extends to Plaintiff's allegations. Calhoun-El acknowledges that he has not raised his claims through the administrative remedy process. Further, there is nothing in the record to suggest Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). Accordingly, Calhoun-El's conditions of confinement claims will be dismissed as to all Defendants for failure to exhaust administrative remedies

## II. Claims against Defendants Stouffer, Galley, Sowers and Baucom

### A. Sovereign Immunity

As noted, Defendants Stouffer, Galley, Sowers and Baucom are sued solely in their official capacities. *See supra* n. 1, at 1. The Eleventh Amendment bars suit in federal court, absent consent, against a state by its own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12–202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. The Eleventh Amendment also bars suits against a state official in his official capacity where, as here, the suit is essentially to recover money from the state. In such cases, state officials may invoke Eleventh Amendment immunity because the state is the real party in interest.

State officials and employees sued in their official capacities are immune from suit for damages brought under 42 U.S.C. § 1983. *See Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th

Cir. 2003) (suits against state officials in their respective official capacities are treated as suits against the state itself). Thus, the claims against Stouffer, Galley, Sowers and Baucom in their official capacities will be dismissed with prejudice.[7]

**B. Respondeat Superior**

Calhoun-El's claims against Stouffer, Galley, Sowers and Baucom are based on their supervisory positions as none of these Defendants is alleged to have been personally involved in the matters at issue. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (stating that for for liability to exist under § 1983, there must be personal involvement by the defendant in the violation alleged).

It is well established that the doctrine of respondeat superior does not apply to claims raised pursuant to 42 U.S.C. § 1983 claim. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials " is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the

---

[7] As noted, Calhoun-El requests declaratory relief of unstated nature.

10

plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Complaint fails to forth such allegations, and there is no evidence to suggest these Defendants had actual or constructive knowledge of the matters at issue here. Consequently, all claims against Defendants Stouffer, Galley, Sowers, and Baucom are dismissed with prejudice.

### III. Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical health care, a plaintiff must demonstrate that Defendants' actions (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, a plaintiff was suffering from a serious medical need and that, subjectively, staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, _F. App'x., 2013 WL 3892952, at *1 (4th Cir. July 30, 2013); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted).

As noted, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires

11

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir.1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Further, "any negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Disagreements between medical staff and an inmate as to the necessity for, or the manner or extent of, medical treatment do not rise to a constitutional injury. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

In this case, Calhoun-El disagrees with prison mental health providers regarding his mental health condition and treatment. Calhoun-El's self-diagnosed "Special Housing Unit Syndrome" is neither a recognized mental health condition nor does it qualify him for admission to the Behavior Management Program or Special Needs Unit. Calhoun-El does not dispute that he has received mental health care and treatment; his disagreement is with the type treatment

received. *See Estelle*, 429 U.S. at 105–06; *see also Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (questions of medical judgment are not subject to judicial review).

Calhoun-El fails to show deliberate indifference on the part of any defendant. While is true that Calhoun-El did not meet the criteria for BMP and SNU, he had access to all other mental health programs at NBCI. He was monitored and treated with medication while on disciplinary segregation. When Calhoun-El, who was receiving Interferon for Hepatitis C, began to exhibit depression as a side effect of Interferon treatment, he received medical attention and care. Calhoun-El's dispute as to whether he is eligible for the BMP or SNU essentially constitutes a disagreement with mental health providers concerning his care and does not support an Eighth Amendment claim.

As a final matter, apart from his conclusory allegation that he was excluded from the SNU and BMP based upon impermissible discriminatory animus, Calhoun-El provides no factual substantiation for this claim. There is nothing in the record to suggest that race or sex is a factor in admission to either program or was a consideration in Calhoun-El's case. (ECF No. 12, Exhibits B and C).[8]

## CONCLUSION

For the reasons explained above, Deidre Mull will be dismissed as a defendant in this proceeding. Calhoun-El's conditions of confinement claim will be dismissed for failure to exhaust administrative remedies. The claims against Defendants Stouffer, Galley, Sowers and Baucom will be dismissed with prejudice. Judgment will be entered in favor of Defendants Shearin and Liller.

January 2, 2014  
Date

_____  
RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE

---

[8] In light of the above analysis, this Court need not reach Defendants' qualified immunity defense.